UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TAMERON GREEN,

              Plaintiff,              Case No. 1:09-cv-317

v.                                          Honorable Gordon J. Quist

MICHIGAN DEPARTMENT
OF CORRECTIONS MEDICAL
DEPARTMENT et al.,

              Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff Tameron Green presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Boyer Road Correctional Facility (OTF). In his amended complaint, Plaintiff sues unknown MDOC Hearing and Policy Administrators and the following OTF employees: Resident Unit Officer (unknown) Sanders, Doctor (unknown) Coleman, Nurses (unknown) Harold and (unknown) Dietrich, and Pharmacy Technician T. Dean.

Plaintiff alleges that on March 3, 2009, he awoke from sleep with an urgent need to use the restroom, as a result of being prescribed a medication called Triamterene, a "water pill." The medication was prescribed by Defendant Coleman. As Plaintiff was using the restroom, Defendant Sanders told him he was out of place and wrote a major misconduct ticket. Plaintiff requested an investigator before the misconduct hearing and asked to have Dr. Coleman give a statement regarding the effect of the water pill. The hearing investigator, (unknown) Kavanagh, instead questioned Nurses Harold and Dietrich, as well as Pharmacy Tech T. Dean, who all testified that the water pills did not have the kind of effect on patients claimed by Plaintiff. On the basis of their testimony, Plaintiff was found guilty of the major misconduct. On the date Plaintiff was interviewed on the misconduct ticket, he was removed from his work assignment, which was his only means of income. It took Plaintiff thirty days to be placed back on assignment. As a result of having been removed from his assignment, Plaintiff will be denied an indigent loan for twelve months.

Following the misconduct hearing, Plaintiff asked to speak with Dr. Coleman, who called Plaintiff to the infirmary. At Plaintiff's request, Dr. Coleman took him off the water pill. A short time later, Plaintiff was called off of the yard to report back to his unit. At that time, Resident Unit Officer Mills ordered Plaintiff to turn in all of his medications, according to instructions

received from Pharmacy Technician T. Dean. Plaintiff gathered his medications and turned them in to the medication window. Dean ordered Plaintiff to go back and get his nitroglycerin pills, too. Plaintiff alleges that he was without all of his medications for 30 days, at which time Physician's Assistant Kent Filsinger called Plaintiff out and returned his medication. Filsinger allegedly told Plaintiff that someone had written a note that Plaintiff had refused his medication.

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs. He seeks compensatory and punitive damages, and he demands that the Michigan Parole Board be notified that the improper misconduct conviction violated Plaintiff's liberty interest by interfering with the likelihood of his release.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff appears to allege that the filing of the misconduct charge and his conviction on that charge violated his right to due process, as he had a valid medical reason for being out of place. He also complains that the hearing investigator did not talk directly to the doctor, only to the nurses and the pharmacy technician.

The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. "[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,*

472 U.S. 445, 455 (1985)). The Supreme Court in *Hill* held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence," a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455). "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added). Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearings officer in the disciplinary proceeding. *Hill,* 472 U.S. at 456; *see also Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003), *aff'd*, 110 F. App'x 491 (6th Cir. 2004). A hearings officer in a prison disciplinary proceeding is not required to find the prisoner guilty beyond a reasonable doubt, or find that guilty was the only reasonable interpretation of the evidence. *Thomas v. Marberry,* No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 4, 2007) (citing *Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)).

The requirements of *Wolff* were satisfied in this case. Plaintiff does not dispute that he was given advance written notice of charges at least 24 hours before the disciplinary hearing, that he was permitted to present evidence in his defense and that he was provided with a hearing report, which contained a statement of evidence relied on by the hearing officer and the reasons for her decision. Plaintiff contends that the hearing was insufficient because the hearing investigator did not obtain a statement from Dr. Coleman. The right to call witnesses or present evidence, however, is not absolute. *Wolff*, 418 U.S. at 566. The United States Supreme Court explained:

> [W]e must balance the inmate's interest[s] against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

*Id.* It is clear from Plaintiff's own allegations that Plaintiff was told that Dr. Coleman's statement was not obtained because it was deemed unnecessary in light of the testimony of other medical personnel that the medication did not have the effect Plaintiff claimed. *See* MICH. COMP. LAWS § 791.252(e) ("[a] hearings officer may refuse to present the prisoner's questions to the witness or witnesses. If the hearings officer does not present the questions to the witness or witnesses, the reason for the decision not to present the questions shall be entered into the record."). The statements of the nurses and the pharmacy technician constituted ample evidence to support the findings of the hearings officer.

Moreover, to the extent Plaintiff claims that Defendant Sanders should not have written the ticket such allegation fails to state a claim. "[T]his court will not interfere with the discretion of prison authorities to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz,* 271 F. Supp. 2d at 948 (citing *Turney v. Scroggy,* 831 F.2d 135, 139-40 (6th Cir. 1987)). Accordingly, Plaintiff fails to state a due process claim against any Defendant arising from his misconduct conviction.

### B. Eighth Amendment

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs when they penalized him for being out of place on the basis of his asserted medical needs and then removed his medications for 30 days. The Eighth Amendment prohibits the infliction of cruel and

unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).

Although he has alleged that Defendants were "deliberately indifferent" to his medical needs, Plaintiff has failed to allege the necessary facts supporting his allegation. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. Instead, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft*, 129 S. Ct. at 1949.

Here, Plaintiff has alleged only that Defendant Dean should have known that taking him off of all of his medications would have presented a substantial risk of serious harm. According to Plaintiff's own allegations, however, his medical file indicated that he had refused his medication and that is why his medication was collected. Although Plaintiff contends that he did not refuse his

medications, he admits that he asked Dr. Coleman to take him off of the water pill, and Coleman did so. Apparently, the notation in Plaintiff's file was inaccurate, reflecting that Plaintiff had asked to be removed from all of his medication.

Such allegations arguably support a claim for negligence against one or more Defendants, but they fall far short of the deliberate indifference necessary to implicate the Eighth Amendment. A mistaken notation in a prisoner's file and reliance on that notation sounds in negligence. Plaintiff has alleged no facts that would make it likely that any Defendant deliberately placed the erroneous notation in his file or had any animus against Plaintiff that might have caused him to do so. As a result, Plaintiff has alleged only the mere "'possibility that a defendant has acted unlawfully.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915 (g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: July 8, 2009 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE